UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN COURTHOUSE

| | |
|---|---|
| Christina Del Rosario, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    - against -<br><br>Sazerac Company, Inc.,<br><br>      Defendant | 1:23-cv-01060-PGG<br><br><br>Amended Class Action Complaint<br><br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Sazerac Company, Inc. ("Sazerac") manufactures, packages, labels, markets, and sells fruit and spice flavored liqueur under the Southern Comfort brand ("Southern Comfort").

 

2. Whether its base alcohol was a neutral spirit or whiskey, purchasers of Southern Comfort knew they were buying a beverage based on distilled spirits.

3. In the last few years, "[Americans] [] have seen some new bottles of alcohol on the

shelves of their favorite gas station [and convenience stores] [which] look exactly like hard liquor."

4. Even journalists and media members were fooled by seeing various brands of hard liquor "sold everywhere," such as gas stations, drug stores and elsewhere, wondering, "what did they do to be able to skirt the law?"

5. A writer for the Albany Times-Union explained that "[T]rying to make sense of the complexities of which stores can sell what becomes an exercise in foundering in the State Liquor Authority website, which [is] recommend[ed] only for frustration masochists."

6. One television station pointed out the trend of "Fake Booze [as] [C]onvenience stores start stocking shelves with faux liquor."

7. Regular consumers, less inclined than investigative journalists to get to the bottom of this, embraced the availability of their favorite distilled spirits, sharing their experiences on social media, praising the authenticity of the Product.

8. However, one Virginia media outlet uncovered "How a major distiller [Defendant] slipped liquor look-a-likes into [] convenience stores."[1]

9. Around the same time, a New York TikTok user, "Kerri Anne Buck," told her followers that "This new thing with the Southern Comfort being sold at the gas stations" was not what she and other consumers expected even though "th[e] little one [has] the exact same label."[2]

---

[1] The only difference between the mini bottles sold in Virginia compared to in New York is that in the former they were classified as wine while here they were called "malt beverages."
[2] https://www.tiktok.com/@kerriannebuck/video/7016868297127857413



10. What Buck uncovered was that the mini "gas station" version lacks distilled spirits beyond a negligible amount of "Natural Whiskey Flavor" because it is actually a "Malt Beverage" (the "Malt").

 

11. According to a professor of economics, "[D]esigning products to match industry regulations is hardly new," noting "how auto-manufacturers have responded to new fuel-efficiency

3

requirements by designing a car's weight to be just within a less stringent standard."

12. In the present instance, the mini bottles of "Southern Comfort" (in this case, the Malt) "circumvent regulations" which prevent distilled spirits from being sold outside of liquor stores in many states.

13. Even though the mini bottles are legally sold, the representations are misleading for numerous reasons.

14. First, while federal and identical state regulations allow the Malt's use of the distilled spirit brand name of Southern Comfort, this is not qualified with the word "brand," which could have alerted buyers that what they are buying has little connection to the distilled spirits this beverage has been known for.

15. Second, the packaging contains identical colors, themes, fonts, symbols and spacing, and even the same outer grooves.

16. Third, the Product's statements of composition, "Malt Beverage With Natural Whiskey Flavors, Caramel Color and Oak Extract," difficult to see without a magnifying glass, does not draw attention to the use of the phrase "Natural Whiskey Flavors."





17. Only if a purchaser has the distilled spirit version next to the mini version (and perfect eyesight) – which based on their places of sale, they will not – could they notice the true Southern Comfort product is identified as "Spirit Whiskey With Natural Flavors and Caramel Color." Unfortunately for most consumers in New York, the distilled spirit version is not available for sale in the same stores as the mini versions, making any comparison impossible. But even in those stores where the two products are sold contemporaneously, reasonable consumers do not, and are not required to, grab similar versions of the same product, flyspeck the labels to confirm, or in this case correct, the deception.

18. Fourth, while the Malt's front label is required to "[I]dentify added flavoring material," the Alcohol Tobacco Tax and Trade Bureau of the Department of the Treasury (the "TTB") concluded that the use of the distilled spirits term "whiskey" in the statement of composition misleads consumers to expect its alcohol content to be mainly from that spirit. 27 CFR 7.147(b)(2)(i).

19. Based on investigation, the amount of whiskey in the Malt is de minimis, equivalent to a thimble per 2500 gallons.

20. Moreover, it is believed that the whiskey is added to the malt base prior to fermentation, which some have argued avoids having to pay extra taxes due to Internal Revenue Service ("IRS") rules, contrary to TTB regulations.

21. Fifth, upon information and belief, at the instructions of Sazerac and/or its agents, sellers describe the Malt as "shots," a term used to refer to small servings of distilled spirits.

22. Sixth, listing "Oak Extract" in the statement of composition creates the false impression the malt beverage base was aged in barrels when it was not. 27 CFR 7.143(h)(1).

23. Seventh, because the Malt implies it was aged in barrels, the emphasis on "Natural

Whiskey Flavor" supports a purchaser's belief that it is a distilled spirit or contains a non-negligible amount of a distilled spirit. 27 CFR 7.143(h)(3).

24. Eighth, the similarity between the two versions creates an overall misleading impression that the mini versions are simply smaller—but otherwise identical—versions of the larger distilled spirits.

## JURISDICTION AND VENUE

25. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

26. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

27. Plaintiff is a citizen of New York.

28. Sazerac is a citizen of Louisiana and Kentucky.

29. The class of persons Plaintiff seek to represent includes persons who are citizens of different states from which Sazerac is a citizen.

30. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores, including grocery stores, big box stores, gas stations and convenience stores, in New York State.

31. Venue is in this District with assignment to the Manhattan Division because a substantial part of the events or omissions giving rise to the claims occurred in Bronx County, including Plaintiff's purchase of the Product, exposure to the representations and omissions, and/or subsequent awareness they were false and misleading.

## PARTIES

32. Plaintiff Christina Del Rosario is a citizen of The Bronx in Bronx County, New York.

33. Defendant Sazerac Company, Inc. is a corporation registered in both Louisiana and Kentucky with its principal place of business at 101 Magazine Street, 5th Floor, New Orleans, LA 70130.

34. Plaintiff purchased the Malt at gas stations and/or convenience stores in Bronx County in or around 2022, and/or among other times, at or around the identified price.

35. As a result of the false and misleading representations, the Malt is sold at a premium price, $0.99 for 50 mL.

36. Plaintiff, is like many consumers of alcoholic beverages, prefers distilled spirits or products containing distilled spirits to malt-based beverages.

37. Plaintiff saw the labeling elements of the mini Southern Comfort and did not notice the differences from the standard Southern Comfort product.

38. Plaintiff expected the mini Southern Comfort to contain whiskey and/or other distilled spirits in a non-de minimis amount.

39. Plaintiff paid more for the Malt than she would have had she known the representations and omissions were false and misleading, or else she would not have purchased it.

40. The value of the Malt that Plaintiff purchased was materially less than its value as represented by Defendant.

## FACTUAL ALLEGATIONS

**The "Malt" v. True Southern Comfort Whiskey**

41. The sale of distilled spirits in small bottles, referred to as "minis" or "nips," is common and known to most Americans due to their abundance on the side of most roads or from being available on airplanes.

42. Until a few years ago, no consumers would have seen non-distilled spirits sold in

mini bottles.

43. The concept of bottling non-distilled spirits in a mini bottle is deceptive, because purchasers of small bottles of alcohol expect what they are buying is potent and high in proof, like Southern Comfort, bottled at 35% alcohol by volume ("ABV") or 70 proof.

44. Purchasers of mini bottles of alcohol are not expecting that what they are buying will be not nearly as strong, as the Malt is 21% ABV and 42 proof.

45. The Malt uses the same font for its name and its flavor; the same background imagery, and all-in-all looks nearly identical:

| MINI MALT VERSION | ORIGINAL VERSION |
|---|---|
|  |  |

46. Making the confusion between the two even worse is the inclusion of the word "original" prominently on the front label of both the original distilled version as well as the mini malt version.

47. A consumer familiar with Southern Comfort and with whiskey-branding in general who purchased the Malt would have to scrutinize further than the reasonable consumer is expected to for them to understand there is no whiskey and there is less alcohol in the "Malt" than there is in true, authentic Southern Comfort. And such a comparison becomes nearly impossible when the retailer does not sell both versions.

48. When viewed together with the Southern Comfort distilled spirit brand name, the label misleads consumers into believing it is or contains distilled spirits, or in fact, whiskey.

49. Purchasers of the Malt are injured when they purchase Malt, believing and relying on Sazerac's representations that what they are buying is, in fact, Southern Comfort, that what they have bought and consumed is not true Southern Comfort nor contains any actual whiskey at all. As such, the Product Plaintiff and the Class members purchased is of lesser quality than what was represented to them.

50. Additionally, Plaintiff and the Class members were injured by paying a premium price for the Products over competing products not masquerading as distilled liquor.

## CLASS ALLEGATIONS

51. Plaintiff brings her claims for relief pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class (collectively "the Class")

> All persons in the State of New York who purchased the Malt during the statutes of limitations for each cause of action alleged.

52. Excluded from the Class are government entities, Sazerac, any entity in which Sazerac has a controlling interest, and Sazerac's officers, directors, affiliates, legal representatives,

employees, co-conspirators, successors, subsidiaries, and assignees, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

53. The Class is properly brought and this action should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

54. **Numerosity**. The Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class, as described above, who have been damaged by Sazerac's deceptive and misleading practices.

55. **Commonality**: The questions of law and fact common to the Class which predominate over any questions which may affect individual members of the Class include, but are not limited to:

   a. Whether Sazerac is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Malt;

   b. Whether Sazerac's misconduct set forth in this Complaint demonstrates that Sazerac had engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Malt;

   c. Whether Sazerac's false and misleading statements concerning its Products were likely to deceive the public;

   d. Whether Sazerac fraudulently advertised the Malt to the public;

   e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other members of the Class; and

   f. Whether Sazerac was unjustly enriched by way of its deceptive advertising to

Plaintiff and the Class.

56. **Adequacy:** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, she has a strong interest in vindicating her rights and the rights of the Class, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

57. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Sazerac's deceptive and misleading marketing and labeling practices.

58. **Superiority:** A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing,

      discovery, and trial of all individual cases;

   d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

   e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

   f.  This class action will assure uniformity of decisions among Class members;

   g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

   h.  Class members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

   i.  It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Sazerac's uniform false advertising to purchase their Products because they were represented as having actual whiskey when the Malt does not.

59.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**CAUSES OF ACTION**
**COUNT I**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and the Class)**

60.  Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

61. Plaintiff brings this claim individually and on behalf of the Class against Sazerac.

62. This claim is brought pursuant to the laws of the State of New York.

63. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

64. Sazerac committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the composition of the Malt, in that it was not actual Southern Comfort whiskey and contained neither actual whiskey nor distilled spirits.

65. Sazerac's deceptive acts and practices were directed at consumers.

66. Sazerac's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Sazerac knew consumers would purchase its Malts and/or pay more for them under the false – but reasonable – belief that they were true Southern Comfort whiskey, based on the Southern Comfort title, logo, font, font size, and the statement "original."

67. Sazerac knows that composition and alcohol content is material to consumers. If such information were not material, Sazerac would not market the Malt in an identical fashion to the way it markets actual Southern Comfort whiskey. As a result of its deceptive acts and practices, Sazerac sold tens if not hundreds of thousands of the Malt to unsuspecting consumers across New York.

68. If Sazerac had advertised the Malt truthfully and in a non-misleading fashion, Plaintiff and other Class members would not have purchased them or would not have paid as much as they did for them.

69. As a direct and proximate result of Sazerac's false, misleading, and deceptive

representations and/or omissions, Plaintiff and other members of the Class were injured in that would not have purchased the Malt, or would have paid substantially less for it, but for Sazerac's misrepresentations and omissions concerning the whiskey and distilled spirit content (or lack thereof) in the Products.

70. On behalf of herself and members of the Class, Plaintiff seeks to recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### COUNT II
### VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the Class)

71. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

72. Plaintiff brings this claim individually and on behalf of the Class against Sazerac.

73. This claim is brought pursuant to the laws of the State of New York.

74. N.Y. Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

75. N.Y. Gen. Bus. Law § 350-A(1) provides, in part, as follows: "The term 'false advertising,' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the

advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

76. Sazerac's labeling and advertisements contain untrue and materially misleading statements concerning Sazerac's Malt since they misrepresent the existence of whiskey and distilled spirits in the Malt. By misrepresenting the true contents of the Malt, Sazerac's marketing and labeling misleads a reasonable consumer.

77. Sazerac had exclusive knowledge of the true whiskey and distilled spirit composition in the Products.

78. Sazerac's misrepresentations and omissions were material because consumers are concerned with the authenticity, quality, and content of alcoholic beverages that they purchase, necessarily including the ingredients therein.

79. As a result of Sazerac's misrepresentations and omissions, Plaintiffs and members of the Class have suffered economic injury because they would not have purchased the Malt, or would have paid substantially less for it, if they had known that the Malt did not contain actual whiskey or distilled spirits.

80. Sazerac's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Malt were and continue to be exposed to Sazerac's material misrepresentations.

81. As a result of Sazerac's recurring, unlawful deceptive acts and practices, Plaintiff and the Class are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Sazerac's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT III
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class)

82. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

83. Plaintiff brings this claim individually and on behalf of the Class against Sazerac.

84. This claim is brought pursuant to the laws of the State of New York.

85. Sazerac's conduct violated, inter alia, state and federal law by manufacturing, advertising, marketing, and selling its the Malt while misrepresenting and omitting material facts.

86. Sazerac's unlawful conduct as described in this Complaint allowed Sazerac to knowingly realize substantial revenues from selling the Malt at the expense of, and to the detriment of, Plaintiff and Class members, and to Sazerac's benefit and enrichment. Sazerac has thereby violated fundamental principles of justice, equity, and good conscience.

87. Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Sazerac for the Malt, which was not as Sazerac represented it to be.

88. It is inequitable for Sazerac to retain the benefits conferred by Plaintiff and Class members' overpayments.

89. Plaintiff and Class members seek disgorgement of all profits resulting from such overpayments and the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Sazerac, as follows:

    (a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class and

           naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)      For an order declaring Sazerac's conduct violates the statutes referenced herein;

(c)      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)      For prejudgment interest in all amounts awarded;

(f)      For an order of restitution and all other forms of equitable monetary relief;

(g)      For an order awarding Plaintiff and the Class their reasonable attorney's fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: June 30, 2023                                Respectfully submitted,

                                                            */s/ Charles D. Moore*
                                                            Charles D. Moore
                                                            **REESE LLP**
                                                            121 N. Washington Ave., 4th Floor
                                                            Minneapolis, MN 55401
                                                           Tel: (212) 643-0500
                                                          cmoore@reesellp.com

                                                           **REESE LLP**
                                                           Michael R. Reese
                                                          100 West 93rd Street, 16th Floor
                                                           New York, NY 10025
                                                           Tel: (212) 643-0500
                                                           mreese@reesellp.com

                                                           **SHEEHAN & ASSOCIATES, P.C.**
                                                           Spencer Sheehan
                                                           60 Cuttermill Rd Ste 412
                                                           (516) 268-7080
                                                           spencer@spencersheehan.com