

CREIGHTON R. MAGID
(202) 442-3555
FAX (202) 442-3199
magid.chip@dorsey.com

October 12, 2023

**BY ECF**
The Hon. Arun Subramanian
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Del Rosario v. Sazerac Company, Inc.,* Case No. 1:23-cv-01060

Dear Judge Subramanian:

Plaintiff Del Rosario's letter to the Court is hugely inaccurate.  Defendant Sazerac Company, Inc. ("Sazerac") took the initiative in preparing a protective order in this litigation and has gone to great lengths to address Plaintiff's concerns through multiple drafts.  The major sticking points in the last conversation between counsel on September 20 concerned redaction and AEO designations:  Plaintiff's counsel asked if Sazerac would agree to provide an explanation for the basis for the AEO designation for any document so designated and objected to any redaction except on grounds of privilege.  On September 26, Sazerac sent Plaintiff's counsel a revised protective order that largely accepted the changes Plaintiff had proposed, and included a provision requiring a written explanation for any document designated AEO.  Plaintiff did not respond.  On October 3, Sazerac reached out to Plaintiff's counsel for an update on the protective order.  Again, Plaintiff did not respond.  Plaintiff's next action was to file her letter.

This action is one of several lawsuits – most with nearly identical complaints – involving malt beverages produced by Sazerac.  The first such lawsuit filed was *McKay v. Sazerac Company, Inc*., No. 3:23-cv-00522, venued in the U.S. District Court for the Northern District of California.  Plaintiff's counsel followed suit, filing this action as well as three cases before Judge Karas.  Sazerac proposed using the protective order entered by the court in *McKay* as a starting point for three reasons:  (a) to avoid having the same documents produced under different terms in multiple litigations, which would result in a logistical nightmare; (b) because the heavily-negotiated *McKay* protective order reflected a balance between Sazerac's concerns and those of plaintiffs represented by experienced counsel; and (c) to avoid having to start drafting from scratch.  Sazerac understood that the *McKay* protective order would be a starting point and would require modification to address specific concerns of Plaintiff's counsel.  At the same time, it was very important to Sazerac to have a degree of consistency across all of the malt beverage cases so that it would not have to review, code, and produce a large volume of documents multiple times under multiple frameworks.  The parties' negotiations were productive and seemed headed toward resolution when Plaintiff simply stopped communicating.

The issues Plaintiff raises all have to do with the AEO designation.  Although the vast majority of the confidential documents that Sazerac stands ready to produce will be designated "Confidential" – a designation to which Plaintiff does not object – a limited number of documents require a more restrictive designation because of their sensitivity.  For example, Plaintiff has requested production of such sensitive information as Sazerac's costs of goods sold and



The Hon. Arun Subramanian
October 12, 2023
Page 2

margins and the ingredients in Sazerac's malt beverages.  (Sazerac has objected to the latter request, since the product ingredients have nothing to do with the case, but in the event the Court required production of documents identifying the product ingredients, the need to restrict access to such documents is obvious.)

To address Plaintiff's concerns that Sazerac would unthinkingly designate large swaths of documents as AEO, Sazerac agreed to provide, for each document designated AEO, a written rationale for the designation.  This requires Sazerac's counsel to review each document proposed for AEO designation, determine if the designation is warranted, and to write an explanation for the designation.  This commitment to provide written explanations enforces the limited nature of the designations, since Sazerac's counsel has no interest in providing written explanations for any more documents than necessary.  The Court's model protective order recognizes, in paragraph 7, the need for AEO designations in appropriate circumstances.  Sazerac can produce documents more quickly by designating them AEO and providing an explanation (which allows Plaintiff an immediate basis for challenging the) rather than by means of a written request, followed by negotiations, followed by letter motions and responses.

### A.    Del Rosario's Claim of a "Non-Objective Standard" for AEO Designations.

Plaintiff first complains that the proposed protective order does not provide an objective basis for determining what constitutes a proper AEO designation.  That is because until all potentially relevant documents in the case are reviewed, it is impossible to identify in advance all documents that would potentially warrant the designation.  This is true of any protective order, and is implicit in paragraph 7 of the Court's template protective order.

### B.    The Alleged "Different Standards" for Showing Documents to Witnesses.

Because certain documents involve highly sensitive proprietary or commercial information, as discussed above, there is a need for both a "Confidential" designation and an AEO designation.  The very purpose of an AEO designation is to limit who can see the documents that have been so designated.  As Plaintiff's counsel points out, the difference is that *any* witness "involved in the subject matter" can be shown "Confidential" documents at a deposition (provided that they have signed the non-disclosure acknowledgement, whereas AEO documents can only be shown to deposition witnesses who sent or received the document, or who otherwise possessed the information in the document.  This prevents disclosure of AEO documents to persons who would not otherwise know of the information contained in the document.  If a witness did not author the document, send the document, receive the document, or know about the information in the document, there would be no basis for examining the witness about the document.  This was discussed thoroughly with Plaintiff's counsel.

### C.    There Are Only Minor Limitations on What Plaintiff Del Rosario Can See.

Plaintiff argues that Ms. Del Rosario should see all documents in the case, including documents designated as AEO.  This eviscerates the purpose of an AEO designation.  As explained above, Sazerac will designate only a limited number of documents as AEO.  The requirement of a written explanation for each document designated AEO makes this self-policing.  Plaintiff has not explained why it would be necessary for Ms. Del Rosario to see such



The Hon. Arun Subramanian
October 12, 2023
Page 3

information.  (If the information is used in some type of damages analysis – the only potentially valid reason for Plaintiff to ask for it in the first place – nothing in the draft protective order precludes Plaintiff from knowing the expert's damages numbers.)

**D.      The Proposed Protective Order Does Not Unduly Limit the Pool of Experts.**

Plaintiff's final argument is that the proposed protective order would unduly limit the pool of potential experts who can see AEO documents.  This is not true.  The proposed protective order provides that *any* expert can see AEO documents, provided that the expert does not work (as an employee, contractor, or consultant) for a competitor or is not likely to work (as an employee, contractor, or consultant) for a competitor.  A expert who works for a competitor or is likely to work for a competitor can still  review AEO documents provided that the expert is disclosed to Sazerac and that Sazerac does not have a good faith reason to object to that expert seeing AEO documents.  This is reasonable compromise being Plaintiff's interest in selecting an expert from among everyone on the planet and Sazerac's interest in keeping its proprietary "crown jewels" out of the hands of competitors.

A person who has recently worked in a particular industry is likely to work in that same industry in the future; they know the industry, have something valuable to offer employers in the industry, and have contacts in the industry to assist in seeking employment in the industry.  Potential experts who have worked in the industry within the past three years are very likely to return to the industry.  The 3 year provision addresses the need to prevent competitors from having access to AEO information.

Plaintiff's final canard is that the proposed protective order somehow would put Plaintiff in an unfair position regarding expertise in the alcoholic beverage industry.  To begin, nothing about the alcoholic beverage industry is at issue in this litigation; the issues are (a) whether consumers are deceived by the *label* and (b) whether anyone has been damaged.  Sazerac has been clear that Southern Comfort Malt Beverage is a malt product and not a whiskey.  There is nothing for an industry insider to impart.  Plaintiff cannot plausibly explain why she would need to retain a Sazerac competitor.  Second, if Plaintiff wanted to retain someone in the industry, her counsel would merely have to disclose the potential expert and would be free to retain the expert absence express objection from Sazerac, which objection must be specific in its rationale, allowing Plaintiff to challenge the objection.  Finally, an NDA is not a panacea.  It would be impossible for a marketing executive at a Sazerac competitor to cleanse her memory of information concerning Sazerac margins, strategies, and other highly sensitive information.

The proposed protective order is carefully calibrated to address the concerns of both Sazerac and Plaintiff Del Rosario.  It avoids having wildly different rules apply to different cases; it limits AEO designations only to the few documents that truly require the designation; it requires Sazerac to explain, in writing, each AEO designation; and it goes out of its way to allow Plaintiff free reign in selecting experts, while imposing limited restrictions on sharing AEO documents with competitors or persons likely to be employed by competitors.



The Hon. Arun Subramanian
October 12, 2023
Page 4

Very truly yours,

Creighton R. Magid

cc:      All Counsel of Record (By ECF)


The parties are hereby ORDERED to use this Court's model protective order. The AEO procedures in that order are sufficient to protect the defendant and fair to the plaintiff.

The parties are ORDERED to sign and date the order and return it to this Court no later than October 18, 2023. The Clerk of Court is directed to terminate the motion at Dkt. 45.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: October 16, 2023