UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MANHATTAN COURTHOUSE

| | |
|---|---|
| Wilbert Andrews and Steven Khan, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>- against -<br><br>Sazerac Company, Inc.,<br><br>      Defendant | 1:23-cv-01060-AS<br><br>Second Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiffs allege upon information and belief, except for allegations about Plaintiffs, which are based on personal knowledge:

1. Sazerac Company, Inc. ("Defendant") manufactures, packages, labels, markets, and sells fruit and spice flavored liqueur under the Southern Comfort brand ("Product").

 

2. Whether its base alcohol was a neutral spirit or whiskey, purchasers of Southern Comfort knew they were buying a beverage based on distilled spirits.

3. In the last few years, "[Americans] [] have seen some new bottles of alcohol on the shelves of their favorite gas station [and convenience stores] [which] look exactly like hard liquor."

4. Even journalists and media members were fooled seeing various brands of hard liquor "sold everywhere," such as gas stations, drug stores and elsewhere, wondering "what did they do to be able to skirt the law?"

5. A writer for the Albany Times-Union explained that "[T]rying to make sense of the complexities of which stores can sell what becomes an exercise in foundering in the State Liquor Authority website, which [is] recommend only for frustration masochists."

6. One television station pointed out the trend of "Fake Booze [as] [C]onvenience stores start stocking shelves with faux liquor."

7. Regular consumers, less inclined than investigative journalists to get to the bottom of this, embraced the availability of their favorite distilled spirits, sharing their since experiences on social media praising the authenticity of the Product.

8. However, one Virginia media outlet uncovered "How a major distiller [Defendant] slipped liquor look-a-likes into [] convenience stores."[1]

9. Around the same time, a New York TikTok user, "Kerri Anne Buck," told her followers that "This new thing with the Southern Comfort being sold at the gas stations" was not what she and other consumers expected even though "th[e] little one [has] the exact same label."[2]

---

[1] The only difference between the mini bottles sold in Virginia compared to in New York is that in the former they were classified as wine while here they were called "malt beverages."
[2] https://www.tiktok.com/@kerriannebuck/video/7016868297127857413



10. What Buck uncovered was that the mini "gas station" version lacks distilled spirits beyond a negligible amount of "Natural Whiskey Flavor" because it is actually a "Malt Beverage."



11. According to a professor of economics, "[D]esigning products to match industry regulations is hardly new," noting "how auto-manufacturers have responded to new fuel-efficiency requirements by designing a car's weight to be just within a less stringent standard."

12. In the present instance, the mini bottles of Southern Comfort "circumvent

3

regulations," which prevent distilled spirits from being sold outside of liquor stores in many states.

13. Even though the mini bottles are legally sold, the representations are misleading for numerous reasons.

14. First, while federal and identical state regulations allow the Product's use of the distilled spirit brand name of Southern Comfort, this is not qualified with the word "brand," which could have alerted buyers that what they are buying has little connection to the distilled spirits this beverage has been known for.

15. Second, the packaging contains identical colors, themes, fonts, symbols and spacing, and even the same outer grooves.

16. Third, the Product's statements of composition, "Malt Beverage With Natural Whiskey Flavors, Caramel Color and Oak Extract," difficult to see without a magnifying glass, identified as "Malt Beverage With Natural Whiskey Flavors, Caramel Color and Oak Extract," draws attention to the use of the "Natural Whisky Flavors."





17. Only if a purchaser has the distilled spirit version next to the mini version (and perfect

4

eyesight) – which based on their places of sale, they will not – could they notice it is identified as "Spirit Whiskey With Natural Flavors and Caramel Color." Unfortunately for most consumers in New York, the distilled spirit version is not available for sale in the stores as the mini versions, making any comparison impossible. But even in those stores where the two products are sold contemporaneously, reasonable consumers do not, and are not required to, grab similar versions of the same product, flyspeck the labels to confirm, or in this case correct, the deception.

18. Fourth, while the Product's front label is required to "[I]dentify added flavoring material," the TTB concluded that the use of the distilled spirits term "whisky" in the statement of composition misleads consumers to expect its alcohol content to be mainly from that spirit. 27 CFR 7.147(b)(2)(i).

19. Based on investigation, the amount of whisky in the Product is *de minimis*, equivalent of a thimble per 2500 gallons.

20. Moreover, it is believed that the whiskey is added to the malt base prior to fermentation, which some have argued avoids having to pay extra taxes due to IRS rules, contrary to TTB regulations.

21. Fifth, upon information and belief, at the instructions of Defendant and/or its agents, sellers describe the Product as "shots," a term used to refer to small servings of distilled spirits.

22. Sixth, listing "Oak Extract" in the statement of composition creates the false impression the malt beverage base was aged in barrels when it was not. 27 CFR 7.143(h)(1).

23. Seventh, because the Product implies it was aged in barrels, the emphasis on "Natural Whiskey Flavor" supports a purchaser's belief that it is a distilled spirit or contains a non-negligible amount of a distilled spirit. 27 CFR 7.143(h)(3).

24. Eighth, the similarity between the two versions creates an overall misleading

impression that the mini versions are simply smaller—but otherwise identical—versions of the larger distilled spirits.

## JURISDICTION AND VENUE

25. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

26. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

27. Plaintiffs Wilbert Andrews and Steven Khan are both citizens of New York.

28. Defendant is a citizen of New Orleans and Kentucky.

29. The class of persons Plaintiffs seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

30. The members of the class Plaintiffs seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores including grocery stores, big box stores, gas stations and convenience stores, in New York.

31. Venue is in this District with assignment to the Manhattan Courthouse because a substantial part of the events or omissions giving rise to Plaintiff Andrews' claims occurred in Bronx County, including his purchase of the Product, exposure to the representations and omissions, and/or subsequent awareness they were false and misleading.

## PARTIES

32. Plaintiff Wilbert Andrews is a citizen of Bronx, Bronx County, New York.

33. Plaintiff Steven Khan is a citizen of Brooklyn, Kings County, New York.

34. Defendant Sazerac Company, Inc. is a corporation registered in both Louisiana and Kentucky with its principal place of business at 101 Magazine Street, 5th Floor, New Orleans, LA

70130.

35. Plaintiff Andrews purchased the Product at gas stations and/or convenience stores in Bronx County in or around 2022, and/or among other times, at or around the identified price.

36. Plaintiff Khan purchased the Product at gas stations and/or convenience stores in Kings County in or around 2022, and/or among other times, at or around the identified price.

37. As a result of the false and misleading representations, the Product is sold at a premium price, $0.99 for 50 mL.

38. Plaintiffs are like many consumers of alcoholic beverages who prefer distilled spirits or products containing distilled spirits to malt-based beverages.

39. Plaintiffs saw the labeling elements of the mini Southern Comfort and did not notice the differences from the standard Southern Comfort product.

40. Plaintiffs expected the mini Southern Comfort contained whisky and/or other distilled spirits in a non-de minimis amount.

41. Plaintiffs paid more for the Product than they would have had they known the representations and omissions were false and misleading, or would not have purchased it.

42. The value of the Product that Plaintiffs purchased was materially less than its value as represented by Defendant.

## FACTUAL ALLEGATIONS

**The "Malt" v. True Southern Comfort Whiskey**

43. The sale of distilled spirits in small bottles, referred to as "minis" or "nips," is common and known to most Americans due to their abundance on the side of most roads or from being available on airplanes.

44. Until a few years ago, no consumers would have seen non-distilled spirits sold in

7

mini bottles.

45. The concept of bottling non-distilled spirits in a mini bottle is deceptive, because purchasers of small bottles of alcohol expect what they are buying is potent and high in proof, like Southern Comfort, bottled at 35% alcohol by volume ("ABV") or 70 proof.

46. Purchasers of mini bottles of alcohol are not expecting that what they are buying will be not nearly as strong, as the Malt is 21% ABV and 42 proof.

47. The Malt uses the same font for its name and its flavor; the same background imagery, and all-in-all looks nearly identical:



| **MINI MALT VERSION** | **ORIGINAL VERSION** |

48. Making the confusion between the two even worse is the inclusion of the word "original" prominently on the front label of both the original distilled version as well as the mini

8

malt version.

49. A consumer familiar with Southern Comfort and with whiskey-branding in general who purchased the Malt would have to scrutinize farther than the reasonable consumer is expected to for them to understand there is no whiskey and there is less alcohol in the "Malt" than there is in true, authentic Southern Comfort. And such a comparison becomes nearly impossible when the retailer does not sell both versions.

50. When viewed together with the Southern Comfort distilled spirit brand name, the label misleads consumers into believing it is or contains distilled spirits, or in fact whiskey.

51. Purchasers of the Malt are injured when they purchase Malt, believing and relying on Sazerac's representations that what they are buying is, in fact, Southern Comfort, that what they have bought and consumed is not true Southern Comfort nor contains any actual whiskey at all. As such, the Product Plaintiffs and the Class members purchased is a lesser quality than what was represented to them.

52. Additionally, Plaintiffs and the Class members were injured by paying a premium price for the Products over competing products not masquerading as distilled liquor.

## CLASS ALLEGATIONS

53. Plaintiffs bring their claims for relief pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class (collectively "the Class")

> All persons in the State of New York who purchased the Malt during the statutes of limitations for each cause of action alleged.

54. Excluded from the Class are government entities, Sazerac, any entity in which Sazerac has a controlling interest, and Sazerac's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assignees, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and

judicial staff.

55. The Class is properly brought and this action should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

56. **Numerosity**. The Class is so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers in the Class as described above who have been damaged by Sazerac's deceptive and misleading practices.

57. **Commonality**: The questions of law and fact common to the Class which predominate over any questions which may affect individual members of the Class include, but are not limited to:

    a. Whether Sazerac is responsible for the conduct alleged herein which was uniformly directed at all consumer who purchased the Malt;

    b. Whether Sazerac's misconduct set forth in this Complaint demonstrates that Sazerac had engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Malt;

    c. Whether Sazerac's false and misleading statements concerning its Products were likely to deceive the public;

    d. Whether Sazerac fraudulently advertised the Malt to the public;

    e. Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other members of the Class; and

    f. Whether Sazerac was unjustly enriched by way of its deceptive advertising to Plaintiffs and the Class.

58. **Adequacy:** Plaintiffs are adequate Class representatives because their interests do

not conflict with the interests of the Class Members they seeks to represent, they have a strong interest in vindicating their rights and the rights of the Class, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

59. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Sazerac's deceptive and misleading marketing and labeling practices.

60. **Superiority:** A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    d. This class action will promote orderly, efficient, expeditious, and appropriate

      adjudication and administration of Class claims;

e. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Sazerac's uniform false advertising to purchase their Products because they were represented as having actual whiskey when the Malt does not.

61. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**CAUSES OF ACTION**
**COUNT I**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiffs and the Class)**

62. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

63. Plaintiffs bring this claim individually and on behalf of the Class against Sazerac.

64. This claim is brought pursuant to the laws of the State of New York.

65. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

66. Sazerac committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the composition of the Malt, in that it was not actual Southern Comfort whiskey and contained neither actual whiskey nor distilled spirits.

67. Sazerac's deceptive acts and practices were directed at consumers.

68. Sazerac's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Sazerac knew consumers would purchase its Products and/or pay more for them under the false – but reasonable – belief that it was true Southern Comfort whiskey, based on the Southern Comfort title, logo, font, font size, and statement "original."

69. Sazerac knows that composition and alcohol content is material to consumers. If such information were not material, Sazerac would not market the Malt in an identical fashion to the way it markets actual Southern Comfort whiskey. As a result of its deceptive acts and practices, Sazerac sold tens if not hundreds of thousands of the Malt to unsuspecting consumers across New York.

70. If Sazerac had advertised the Malt truthfully and in a non-misleading fashion, Plaintiffs and other Class members would not have purchased them or would not have paid as much as they did for them.

71. As a direct and proximate result of Sazerac's false, misleading, and deceptive representations and/or omissions, Plaintiffs and other members of the Class were injured in that would not have purchased the Malt, or would have paid substantially less for it, but for Sazerac's misrepresentations and omissions concerning the whiskey and distilled spirit content (or lack

thereof) in the Products.

72. On behalf of themselves and members of the Class, Plaintiffs seek to recover their actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiffs and the Class)**

73. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

74. Plaintiffs bring this claim individually and on behalf of the Class against Sazerac.

75. This claim is brought pursuant to the laws of the State of New York.

76. N.Y. Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

77. N.Y. Gen. Bus. Law § 350-A(1) provides, in part, as follows: "The term 'false advertising,' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

78. Sazerac's labeling and advertisements contain untrue and materially misleading

statements concerning Sazerac's the Malt inasmuch as they misrepresent the existence of whiskey and distilled spirits in the Malt. By misrepresenting the true contents of the Malt, Sazerac's marketing and labeling misleads a reasonable consumer.

79. Sazerac had exclusive knowledge of the lead levels in the Products.

80. Sazerac's misrepresentations and omissions were material because consumers are concerned with the authenticity, quality, and content of alcoholic beverages that they purchase, necessarily including the ingredients therein.

81. As a result of Sazerac's misrepresentations and omissions, Plaintiffs and members of the Class have suffered economic injury because they would not have purchased the Malt, or would have paid substantially less for it, if they had known that the Malt did not contain actual whiskey or distilled spirits.

82. Sazerac's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Malt were and continue to be exposed to Sazerac's material misrepresentations.

83. As a result of Sazerac's recurring, unlawful deceptive acts and practices, Plaintiffs and the Class are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Sazerac's unlawful conduct, interest, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives of the Class and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

(b) For an order declaring Sazerac's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order awarding Plaintiffs and the Class their reasonable attorney's fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: February 5, 2024

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Tel: (212) 643-0500
mreese@reesellp.com

**REESE LLP**
Charles D. Moore
121 N. Washington Ave., 4th Floor
Minneapolis, MN 55401
Tel: (212) 643-0500
cmoore@reesellp.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10158
San Juan, PR 00907
Tel: (215) 789-4462
klaukaitis@laukaitislaw.com

**Pro Hac Vice* Application Forthcoming